In re HEALTHCO INTERNATIONAL, INC., Debtor.

William A. BRANDT, Jr., Trustee, Plaintiff,

v.

HICKS, MUSE & CO., INCORPORATED, et al., Defendants.

Bankruptcy No. 93–41604–JFQ. Adv. No. 95–4154.

United States Bankruptcy Court, D. Massachusetts.

Oct. 2, 1996.

J. Joseph Bainton, Jose Baez, Ross & Hardies, New York City, Michael A. Khoury,

Cohn & Kelakos, Boston, MA, for William A. Brandt, Trustee.

Carl Metzger, Testa, Hurwitz & Thibeault, Boston, MA, for Wand Partners, Mercury Asset Management, Life Partners Group.

David C. Fixler, Rubin & Rudman, Boston, MA, for Robert Casey, Helen Cyker.

Andrew A. Kress, Cherise Wolas Kasica, Arthur Steinberg, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Kaye, Scholer, Fierman, Hays & Handler.

Daniel J. Lyne, Hanify & King, Boston, MA, for Ray Doherty.

Mike McKool, Jr., Robert Elkin, Phillip N. Smith, Jr., Jeffrey A. Carter, McKool Smith, P.C., Dallas, TX, for 'The Hicks, Muse Group'.

Steven M. Pesner, Akin, Gump, Strauss, Hauer & Feld, New York City, for 'The Apollo Group'.

Christian M. Hoffman, Foley, Hoag & Eliot, Boston, MA, for Coopers & Lybrand.

Michael Jankowski, Kathleen Donius, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, WI, for Valuation Research Corp.

William J. Hanlon, Goldstein & Manello, P.C., Boston, MA, for Conseco.

John E. Tener, H. Bissell Carey, III, Robinson & Cole, Boston, MA, Joseph L. Clasen, Robinson & Cole, Stamford, CT, for Chrysler Capital Corp.

Dennis E. Glazer, Nancy Lazar, Davis, Polk & Wardwell, New York City, for J.P. Morgan & Co., Inc.

Gary L. Weiner, Matthew Gluck, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Vincent A. Mai, Thomas L. Kempner.

Hugh J. Gorman, III, Hinckley, Allen, Snyder & Comen, Boston, MA, for Joel Lewin.

Christopher T. Vrountas, Cooke, Clancy & Gruenthal, Boston, MA, for Marvin Cyker.

Thomas G. Rafferty, Cravath, Swaine & Moore, New York City, Arnold P. Messing, Choate, Hall & Stuart, Boston, MA, for Lazard Freres & Co.

Edwin G. Schallert, Debevoise & Plimpton, New York City, for Chancellor Trust Co., Chancellor Capital Management.

David A. Parke, Mark D. Cress, Buckley, Richardson & Gelinas, Springfield, MA, for Cramer, Rosenthal, McGlynn.

Mark N. Parry, Moses & Singer, New York City, for Gemini Partners, Arthur M. Goldberg.

Louis Goodman, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, for Skadden, Arps, Slate, Meagher & Flom.

Darragh Kasakoff, Seder & Chandler, Worcester, MA, for Richards, Layton & Finger, Martineau Walker.

Robert Seder, Seder & Chandler, Worcester, MA, for Weil, Gotshal & Manges.

James F. Wallack, Goulston & Storrs, Boston, MA, for Morgan Stanley & Co.

Vincent Amoroso, Parker, Coulter, Daley & White, Boston, MA, for Robert Mulcahy, III.

Timothy C. Blank, Dechert, Price & Rhoads, Boston, MA, for Bar & Karrer.

John Gilmore, Hill & Barlow, Boston, MA, for 'The Airlie Group'.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Weil, Gotshal & Manges ("WGM"), a law firm, moves for summary judgment dismissing the complaint as against WGM. William A. Brandt, Jr., the chapter 7 trustee (the "Trustee"), bases his complaint upon the 1991 leveraged buyout (the "LBO") of Healthco International, Inc. (the "Debtor"). He has joined as defendants virtually everyone who had any connection with the LBO. Among the causes of action included in the complaint are those grounded on fraudulent transfer law, statutory law governing shareholder distributions, principles of unjust enrichment, fiduciary obligations of directors, and fiduciary obligations of controlling shareholders. In count 9, the Trustee seeks to recover as a fraudulent transfer $2.3 million paid to WGL as its fee in representing the buyer in the transaction. Having taken the

matter under advisement after a hearing, I grant the motion in part and deny it in part.

In support of its motion, WGM has submitted a "Statement of Undisputed Material Facts" and an affidavit of its partner, Lawrence D. Stuart, Jr., with attached documentation. The Trustee contests nothing contained in the Statement or the affidavit. I therefore take their contents as true. Set forth here are only those facts relevant to disposition of the present motion.

### FACTS

In 1990, the Debtor's management was embroiled in a proxy contest with Gemini Partners, L.P. ("Gemini"), which had recently purchased just under 10% of the Debtor's outstanding shares. Management decided to cash out its shares and found a "white knight" purchaser in the person of Hicks, Muse & Co., Incorporated ("Hicks, Muse"), a Dallas-based investment banking firm which specialized in leveraged buyouts. WGM represented Hicks, Muse and the entities it formed to effectuate the LBO.

The parties eventually agreed upon a $15 per share price. The mechanics employed consisted of a $15 cash tender offer followed by a merger which cashed out all shares (except the buyer's) not purchased under the tender, at the same $15 per share price. Hicks, Muse organized HMD Acquisition Corp. ("Acquisition"), which was a subsidiary of HMD Holding Co., Inc. ("Holding"), controlled by Hicks, Muse. Acquisition acquired most of the Debtor's stock through a $15 per share cash tender offer which closed on May 2, 1991. On May 22, 1991, Acquisition merged into the Debtor, with all shares unpurchased under the tender offer, except those owned by Acquisition, cashed out at the same price. As a result, Acquisition became the Debtor's sole shareholder. The total price paid for the shares, including conversion of $34.5 million of 7% convertible subordinated debentures and the cash out of existing stock options, was approximately $142 million. Professional fees increased the total cost substantially above that figure.

The funds came from these sources:

(1) A consortium of banks loaned Acquisition $50 million under a "Tender Credit Agreement";

(2) Acquisition sold $45 million of its senior subordinated notes;

(3) Hicks, Muse made an equity investment of $55 million in Acquisition, through Holding;

(4) The same bank consortium loaned funds under a "Merger Credit Agreement," which paid the $50 million loan made under the Tender Credit Agreement and provided up to an additional $75 million.

The $2.3 million paid to WGM was made by two wire transfers from Acquisition. One was dated May 2, 1991 in the sum of $1.6 million and the other was dated May 22, 1991 in the sum of $700,000.

### FRAUDULENT TRANSFER ISSUE

■ In an unpublished ruling, I have previously held with respect to other transfers at issue that funds transferred by Acquisition prior to the effectiveness of the merger are not transfers by the Debtor and hence are immune from fraudulent transfer attack. The Trustee had argued, unsuccessfully, that the entire transaction, including transfers under both the tender offer sales and the merger, should be integrated, or "collapsed," into one transaction, so that payments made by Acquisition prior to its merger into the Debtor are treated as payments by the Debtor. I then distinguished, and do so now, the facts here from those presented by a loan made to a debtor when the loan proceeds are immediately used to pay the debtor's stockholders. That was the situation in *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1302–03 (3d Cir.1986), *cert. denied*, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987). The court there properly integrated into one transaction the loan and the stockholder distribution. As a result of so doing, the court ruled the stockholders and not the debtor received consideration for the loan. The court therefore voided the lender's debt and security interests as fraudulent obligations and transfers. Such integration makes sense when, as there, the debtor made a transfer and the lender was well aware of the use to

be made of its loan. *See* James F. Queenan, Jr., *Chapter 11 Theory and Practice* § 27.13 (1994). Here, however, the Debtor made no transfer when Acquisition paid WGM $1.6 million on May 2, 1991, prior to the merger taking effect. The Debtor never had the funds to make the transfer.

I disagree with *Wieboldt Stores v. Schottenstein,* 94 B.R. 488, 500–04 (N.D.Ill.1988), relied upon by the Trustee. In that case, borrowed funds passed from the lender to the buyer to selling shareholders. The court held the insider selling shareholders responsible under a fraudulent transfer theory, but ruled in favor of the public selling stockholders. According to the court, the insiders' participation in the transaction justified "collapsing" the transaction as to them. It failed to explain how a collapsing theory can result in a transfer by a debtor when the debtor made no actual transfer.

■ Standing in a different light is the $700,000 wire payment made by Acquisition to WGM on May 22, 1991. The merger closed on that day. The documents offered in support of the motion show neither the time of day the merger became effective nor the time of day the payment was made. Even though made by wire transfer from Acquisition, the payment would be a transfer by the Debtor if it was made after Acquisition merged into the Debtor. The documents are thus equivocal on this point. Perhaps one could make the inference that the payment was intended to be made upon the merger becoming effective because it is dated the day the merger closed. But it seems preferable that a fact finder have the opportunity to receive some evidence on this point, if indeed there is any to be offered. There is therefore present a genuine issue of material fact.

■ I reject the Trustee's argument that the Debtor should be treated as having "indirectly" made either or both of these payments if it is established that they came from the proceeds of a loan for which the Debtor became liable once the merger was effective. As discussed, for a transfer to be avoided as fraudulent it is necessary that the debtor make an actual transfer. Thus I need not deal with WGM's contention that the loan

necessarily came from the $55 million equity investment as required by the bank loan agreement. There is a separate cause of action with respect to the bank obligations incurred, but that cause of action has been settled with the consortium of banks providing financing.

■ WGM's final argument is disingenuous and frivolous. It asserts it acted in good faith and is therefore protected by section 550(b) of the Code. But subsection (b) of the statute applies only to recoveries sought under subsection (a)(2), which is restricted to transfers to "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(2) (1994). If WGM is a transferee at all, it is an initial transferee.

A separate order has issued granting the motion as to the $1.6 million payment and denying it as to the $700,000 payment.

### *ORDER*

Weil, Gotshal & Manges ("WGM") having filed a motion for summary judgment dismissing the complaint as against it, and the court having today issued an opinion supporting a partial grant of the motion, in accordance with that opinion it is hereby

ORDERED, that

1. The complaint is dismissed as against WGM with respect to the $1.6 million payment made to it on May 2, 1991.

2. The motion for summary judgment filed by WGM is denied with respect to the $700,000 paid it on May 22, 1991.