**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-4012 & 17-1439
_____


CRYSTALLEX INTERNATIONAL CORP.

v.

PETRÓLEOS DE VENEZUELA, S.A.;
PDV HOLDING, INC.; and
CITGO HOLDING, INC, f/k/a PDV AMERICA, INC.

PDV HOLDING INC.,
                                        Appellant

_____


On Appeal from the District Court
for the District of Delaware
(District Court No. 1-15-cv-01082)
District Court Judge:  Honorable Leonard P. Stark

_____


Argued September 12, 2017

(Opinion filed:  January 3, 2018)

Before: VANASKIE, RENDELL, and FUENTES,
Circuit Judges

Nathan P. Eimer     [ARGUED]
Lisa S. Meyer
Elmer Stahl LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604


Kenneth J. Nachbar
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

            *Counsel for Appellant PDV Holding, Inc.*


Robert L. Weigel     [ARGUED]
Jason W. Myatt
Rahim Moloo
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166

Raymond J. DiCamillo
Jeffrey L. Moyer
Travis S. Hunter
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

> *Counsel for Appellee Crystallex International Corp.*

————————

O P I N I O N

————————

**RENDELL**, Circuit Judge:

At first glance this case appears exceedingly complex—with its tangle of debtors, creditors, parents, subsidiaries, alter egos, and complex international corporate transactions. But when one cuts through this morass, the question at the center of this case is quite simple: can a transfer by a non-debtor be a "fraudulent transfer" under the Delaware Uniform Fraudulent Transfer Act ("DUFTA")? The role of a federal court in this situation is to predict how the Supreme Court of Delaware would answer this question. We are constrained to conclude that a transfer by a non-debtor cannot be a "fraudulent transfer" under DUFTA. While we do not condone the debtor's and the transferor's actions, we must

3

conclude that Crystallex has failed to state a claim under DUFTA.[1]

## I. Background

### A. The Parties and Related Entities

Appellant Crystallex International Corp. ("Crystallex"), a Canadian gold producer, owned the rights to Las Cristinas gold reserve in the Bolivarian Republic of Venezuela ("Venezuela"). In 2011, Venezuela nationalized its gold mines and expropriated Crystallex's rights to Las Cristinas. Crystallex subsequently initiated an arbitration proceeding against Venezuela before the World Bank. It claimed that, by expropriating Crystallex's rights to Las Cristinas, Venezuela had violated a bilateral investment treaty with Canada. Venezuela was the sole defendant in the arbitration proceeding and the only entity claimed to be obligated to Crystallex for any resulting judgment. The arbitrators found that Venezuela had breached the treaty and awarded Crystallex $1.202 billion. *Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela*, 244 F. Supp. 3d 100, 107 (D.D.C. 2017). The District Court for the District of Columbia confirmed the arbitration award, in accordance with the Federal Arbitration Act, 9 U.S.C.A. § 1, et seq. *Crystallex*, 244 F. Supp. at 122.

Venezuela owns 100% of the shares of Petróleos de Venezuela, S.A. ("PDVSA"). PDVSA is alleged to be

---

[1] The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1330(a), 1367. This Court has jurisdiction to hear PDVH's interlocutory appeal under 28 U.S.C. § 1292(b).

4

Venezuela's alter ego, a "national oil company through which Venezuela implements government policies at home and abroad." A31. PDVSA owns 100% of PDV Holding, Inc. ("PDVH"), which in turn owns 100% of CITGO Holding, Inc. ("CITGO Holding"). CITGO Holding owns 100% of CITGO Petroleum Corporation ("CITGO Petroleum"). PDVSA is a foreign corporation based in Venezuela. PDVH, CITGO Holding, and CITGO Petroleum are Delaware corporations.

## B. Litigation Against PDVH

Crystallex brought this suit against PDVH[2] in the District of Delaware, alleging that PDVH had violated DUFTA's prohibition against fraudulent transfers.[3] According to Crystallex, Venezuela realized that it was "facing billions of dollars in liability from the numerous arbitration proceedings arising from its repeated expropriation of foreign investments," including the Crystallex proceeding. A30. "On numerous occasions, Venezuelan government officials stated publicly that Venezuela would refuse to pay any anticipated arbitral award against it and would proactively thwart efforts to enforce such awards." A40.

---

[2] PDVSA and CITGO Holding were also named as defendants in the original suit. The District Court dismissed Crystallex's claims against PDVSA and CITGO Holding. Those rulings are not before us on appeal.

[3] Crystallex also alleged claims of common law civil conspiracy against the three defendants. The District Court dismissed those claims against all three defendants. Those rulings are not before us on appeal.

"As part of [its] plan to thwart enforcement," Venezuela orchestrated a series of debt offerings and asset transfers among PDVSA, PDVH, CITGO Holding, and CITGO Petroleum. A30. Specifically, Venezuela sought to "monetize its interests in CITGO [Petroleum]," its largest United States-based asset, and repatriate the proceeds. A40. To this end, Venezuela "enlisted its alter ego PDVSA," who in turn "directed its wholly-owned subsidiary PDVH to direct its wholly-owned subsidiary CITGO Holding to issue $2.8 billion in debt."[4] A31. CITGO Holding, in turn, transferred the proceeds from the issuance of debt to its parent PDVH as a shareholder "dividend." A31. PDVH then declared a dividend of the same amount to its parent PDVSA, a Venezuelan corporation and the alleged alter ego of Venezuela, thereby repatriating the money to Venezuela and shielding it from an enforcement action in the United States. *Id.*

These transactions formed the basis of Crystallex's DUFTA claim against PDVH. As a result of these transfers, "nearly $2.8 billion in 'dividends' ended up in the hands of PDVSA (and therefore Venezuela) outside the United States where they could not be reached by Venezuela's creditors." A43. Under DUFTA,

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the

---

[4] The mechanics of the $2.8 billion debt offering were fairly complex. However, the net result was that CITGO Petroleum was left with negative shareholder equity and rendered insolvent, with most its value transferred to CITGO Holding.

creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor. 6 Del. C. § 1304.

## C. District Court Denies PDVH's Motion to Dismiss

PDVH moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). It argued that Crystallex had failed to state a claim under DUFTA because the allegedly fraudulent transfer was not made "by a debtor"—that is, by Venezuela—as required by the statute. 6 Del. C. § 1304(a).[5] The District Court denied PDVH's motion to dismiss, concluding that there had indeed been a transfer "by a debtor." *Crystallex Int'l Corp. v. Petroleos de Venezuela, S.A.*, 213 F. Supp. 3d 683 (D. Del. 2016).

---

[5] PDVH's Motion to Dismiss contained two additional arguments. First, it argued that the transfer from PDVH to PDVSA did not involve property "of a debtor," as required by the statute. The District Court rejected this argument, and PDVH does not challenge this legal analysis on appeal. Second, PDVH argued that the DUFTA claim was preempted by the attachment immunity provisions of the Foreign Sovereign Immunities Act ("FSIA"). The District Court rejected this argument as well. PDVH appeals that decision. Because we will reverse the District Court's order based on the DUFTA claim, we need not reach the FSIA issue.

In reaching this conclusion, the District Court first correctly stated that Crystallex's only potential debtors were Venezuela and its alleged alter ego PDVSA. *Crystallex*, 213 F. Supp. 3d at 691. Therefore, "in the narrowest sense of the term," none of the transfers were "directly undertaken 'by' the 'debtor.'" *Id.* Nonetheless, the District Court found that PDVH—a "non-debtor transferor"—could be liable under DUFTA for its dividend transfer to PDVSA. *Id.* at 693. In support of this conclusion, the District Court noted that "DUFTA includes within its ambit 'indirect . . . mode(s) . . . of disposing of or parting with an asset or an interest in an asset.'" *Id.* at 691 (quoting 6 Del. C. § 1301(12)). It also cited Merriam-Webster's definition of the word "by," which includes "through the agency or instrumentality of" and "on behalf of." *Id.* Given the alleged "extensive, if not dominating, involvement" of the debtor Venezuela, the PDVH transfer was executed by an "instrumentality" of the debtor or on its "behalf." *Id.* Therefore, the District Court reasoned, the transfer from PDVH to PDVSA was "a transfer made in every meaningful sense 'by a debtor,'" despite the fact that PDVH was *not* in fact a debtor. *Id.* at 691-92. Finally, the District Court noted that its holding was in line with the purpose of DUFTA, which "broadly provides for the application of 'the principles of law and equity.'" *Id.* at 692.

PDVH filed a motion to certify the District Court's Order for interlocutory review pursuant to 28 U.S.C. § 1292(b), arguing that the District Court incorrectly concluded that DUFTA extends to transfers by non-debtors. After briefing and oral argument, the District Court granted PDVH's motion, and we accepted PDVH's petition for permissive review.

8

## II. Analysis[6]

While we acknowledge the appeal to equity that the District Court and our dissenting colleague have expressed, we are compelled to conclude that we must reverse the District Court's Order denying PDVH's motion to dismiss, because transfers by non-debtors are not fraudulent transfers under DUFTA as it has been interpreted by the Delaware courts. To survive a motion to dismiss, a plaintiff must allege each "required element" of his claim. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). The DUFTA statute reads, in relevant part:

> A *transfer* made or obligation incurred *by a debtor* is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . *[w]ith actual intent* to hinder, delay or defraud any creditor of the debtor.

---

[6] We review a District Court's denial of a Rule 12(b)(6) motion to dismiss *de novo*. *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 242 (3d Cir. 2015). We "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wyndham Worldwide*, 799 F.3d at 242.

9

6 Del. C. § 1304 (emphasis added).

In order to withstand a motion to dismiss a claim under DUFTA, therefore, Crystallex must successfully plead three things: (1) a transfer, (2) by a debtor, (3) with actual intent to hinder, delay, or defraud a creditor. This case turns on the meaning of the second element, "by a debtor."

Based on the decisions of the Delaware Chancery Court and other Delaware state law principles, we conclude that the transfer by non-debtor PDVH to PSVHA was not a fraudulent transfer under DUFTA. "Our role in diversity cases is to apply state law." *Sheridan v. NGK Metals*, 609 F.3d 239, 254 (3d Cir. 2010). "A federal court under *Erie* is bound to follow state law as announced by the highest state court." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007). "[I]f that state's highest court has not provided guidance, we are charged with predicting how that court would resolve the issue." *In re Energy Future Holdings Corp. v. Energy Future Intermediate Holdings Co.*, 842 F.3d 247, 253-54 (3d Cir. 2016). In doing so, we must give "due deference" to the intermediate state courts' rulings. *In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014). "This standard places a significant constraint on us[.]" *Sheridan*, 609 F.3d at 254 (quoting *Jewelcor Inc. v. Karfunkel*, 517 F.3d 672, 676 n.4 (3d Cir. 2008)). "Unlike our role in interpreting federal law, we may not 'act as a judicial pioneer' in a diversity case." *Sheridan*, 609 F.3d at 254 (citation omitted).

Crystallex alleges that PDVH's transfer to PDVSA was part of a scheme, designed in part by Venezuela, to transfer $2.8 billion out of the United States, placing it out of

10

the reach of Crystallex or other creditors attempting to enforce a judgment against Venezuela. It alleges that, "[t]ogether, [Venezuela, through its alter ego] PDVSA, PDVH, and CITGO Holding . . . devised a scheme" to liquidate the value of CITGO Petroleum, Venezuela's largest United States-based asset. A31, A41. Pursuant to this "strategy concocted by PDVSA, PDVH, and CITGO Holding," CITGO Holding would transfer billions of dollars to PDVH "where, in turn, those funds would be paid as a dividend to PDVH's direct parent[,] . . . moving the funds to PDVSA outside the United States." A41.

But more important is what Crystallex does not allege. It does not allege that PDVH is a debtor or otherwise liable for the arbitral judgment Crystallex has obtained against Venezuela. Absent is any allegation that Venezuela or PDVSA—the only potential debtors[7]—transferred any property. Instead, Venezuela, through its alleged alter ego PDVSA, *received* the $2.8 billion in question. The transfer was clearly alleged to have been *by* the non-debtor PDVH. As an initial matter, this transaction seems to lack the principal harm visited upon creditors in a fraudulent transfer, namely the debtor's alienation of an asset otherwise available to pay its debts. Here, the alienation complained of was geographical. It was not technically a transfer *by* the debtor but a transfer *to* the debtor which, by virtue of international law, resulted in the assets being out of the reach of creditors. This situation is not covered, or contemplated, by DUFTA.

---

[7] PDVSA was not involved in the arbitration proceeding. But if we accept as true Crystallex's allegation that PDVSA is the alter ego of Venezuela, it is at least theoretically possible that PDVSA could be liable for the arbitration award as well.

11

The allegations in the complaint raise two questions. First, can a transfer by a non-debtor such as PDVH constitute a fraudulent transfer under DUFTA? If not, we then ask whether the allegations in the complaint, whereby the debtor Venezuela devised the scheme, can state a claim for relief under DUFTA based on either an aiding and abetting or a conspiracy theory. The answer to both questions is no.

## A. Non-Debtor Liability Under DUFTA

Although the Delaware Supreme Court has not had the opportunity to consider whether non-debtor transferors can commit fraudulent transfers under DUFTA, the Chancery Court has answered that question in the negative. *See Edgewater Growth Capital Partners v. H.I.G. Capital, Inc.*, C.A. No. 3601-VCS, 2010 WL 720150, at *2 (Del. Ch. Mar. 3, 2010) ("By its own terms, the Delaware Fraudulent Transfer Act only provides for a cause of action by a creditor against debtor-transferors or transferees."); *In re Wickes Trust*, No. Civ. A. 2515-VCS, 2008 WL 4698477, at *7-8 (Del. Ch. Oct. 16, 2008) ("in order to have a fraudulent transfer claim, one must have a valid claim against the person . . . alleged to have fraudulently made the transfer").[8]

---

[8] Although these and several other Chancery Court opinions we rely on are unpublished, Delaware courts give such opinions substantial precedential weight. *See Aprahamian v. HBO & Co.*, 531 A.2d 1204, 1207 (Del. Ch. 1987) ("An unreported decision [is] entitled to great deference"); 1-4 Corp. and Commercial Practice in DE Court of Chancery § 4.04, Lexis (2017) ("The mere fact that a case is not reported should not be taken to suggest that unpublished decisions are

The Chancery Court has also rejected fraudulent transfer claims against non-debtor transferors under analogous provisions in the federal Bankruptcy Code, 11 U.S.C.A. § 548. *See Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, C.A. No. 7994-VCN, 2016 WL 769586, at *3 (Del. Ch. Feb. 18, 2016), *aff'd sub nom*. *Klauder v. ECHO/RT Holdings, LLC*, No. 133, 2016 WL 7189917 (Del. Dec. 12, 2016) (rejecting a fraudulent conveyance claim against a non-debtor subsidiary of the debtor parent company). *See also In re Plassein Int'l Corp. v. B.A. Capital Co.*, 366 B.R. 318, 326 (Bankr. D. Del. 2007), *aff'd.* 388 B.R. 46 (D. Del. 2008), *aff'd* 590 F.3d 252 (3d Cir. 2009) (dismissing state and federal fraudulent transfer claims because the allegedly fraudulent transfer was made by a non-debtor).

Although Crystallex's claim arises under DUFTA, not the Bankruptcy Code, these decisions are instructive. The relevant DUFTA and Bankruptcy Code provisions are nearly identical, and Delaware courts have interpreted and applied them uniformly. *Compare* 11 U.S.C. § 548 *with* 6 Del. C. §§1302-1306. "Because Delaware has adopted the Federal UFTA, a statute that was itself modeled on Section 548 of the Bankruptcy Code . . . Delaware courts generally recognize

---

without precedential value. Emphatically to the contrary, unpublished letter and memorandum opinions, and even some oral rulings from the bench, are afforded a considerable precedential weight [in Delaware], especially in view of the fact that unreported decisions often are the only authority on point where novel issues are involved"). In predicting how the Delaware Supreme Court would resolve this issue, we thus give such opinions substantial precedential weight as well.

13

that our state and the federal fraudulent transfer statutes' principles are substantially the same." *Ki-Poong Lee v. So*, C.A. No. N14C-08-173 PRW, 2016 WL 6806247, at \*3 (Del. Super. Ct. Nov. 17, 2016). *See also In re PHP Healthcare Corp.*, 128 Fed. Appx. 839, 847 (3d Cir. 2005) ("We need not discuss the provisions of the Delaware Fraudulent Transfer Act . . . because they are substantially the same as the relevant parts of the Bankruptcy Code). DUFTA is "virtually a carbon copy of the fraudulent transfer law under the Bankruptcy Code" and "the result under Delaware law should be the same as the outcome under the Bankruptcy Code." *In re Trace Int'l Holdings, Inc. v. Dow Chemical Co.*, 287 B.R. 98, 105 n.5 (Bankr. S.D.N.Y. 2002). Just as the Chancery Court has found that a non-debtor transferor is not liable under the Bankruptcy Code, a non-debtor transferor is not liable under DUFTA.

Here, Crystallex has failed to allege that PDVH is a debtor or that PDVH would otherwise be liable to Crystallex for any judgment against Venezuela. The Dissent notes that no Delaware case has specifically "held that non-debtor transferors are immune from liability under the Act." Dissenting Op. at 4. But the question here is not one of immunity. Rather, we must decide whether a transfer by a non-debtor fits within the statutory definition of a fraudulent transfer in the first place. Because relevant Delaware precedent makes it clear that the answer to this question is "no," non-debtor PDVH simply could not have committed a fraudulent transfer in violation of DUFTA.

In addition, reading "by a debtor" broadly enough to allow a non-debtor subsidiary transferor (here, PDVH) to be liable, simply because its parent company (here, Venezuela,

14

through its alter ego PDVSA) is a debtor, would undermine a fundamental precept of Delaware corporate law: parent and subsidiary corporations are separate legal entities. As the District Court correctly noted, "Delaware public policy does not lightly disregard the separate legal existence of corporations." *Crystallex*, 213 F. Supp. 3d at 690 (quoting *Spring Real Estate*, 2016 WL 769586, at *3 n.35). "Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace ex rel. Cencom Cable Income Partners II v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) (internal quotation marks omitted). Delaware law "tends to accord dignity to legal entities except in cases in which the traditional law of piercing the corporate veil is met." *Hart Holding Co. v. Drexel Burnham Lambert Inc.* C.A. No. 11514, 1992 WL 127567, at n.11 (Del. Ch. 1992). Such cases are rare, and include situations where the subsidiary is a mere "alter ego" of the parent. *See Mabon, Nugent & Co. v. Texas Am. Energy Corp.*, CIV A No. 8578, 1990 WL 44267 (Del. Ch. 1990) (describing possible grounds for piercing the corporate veil under Delaware law). Crystallex alleges in great detail that *PDVSA* is Venezuela's alter ego. But that is beside the point. Tellingly, it does not allege that PDVH is Venezuela's or PDVSA's alter ego or any other basis on which we could "pierce the corporate veil." Absent such allegations, we are unwilling to disregard PDVH's distinct corporate identity and attribute to it the actions of the debtor.

Crystallex's remaining arguments for interpreting DUFTA to cover non-debtor transferors are also of no avail. First, Crystallex urges that non-debtor transferors are covered by DUFTA because § 1307(c) of the statute shows that the legislature contemplated such liability. Under § 1307(c), "a

15

creditor shall have no right to relief against any trustee, attorney or other advisor who has not acted in bad faith on account of any transfer." 6 Del. C. § 1307(c). According to Crystallex, the inverse must be true: non-debtors—namely, trustees, attorneys, or other advisors—who have acted in bad faith can be liable under DUFTA. This argument fails. First, this section of the statute does not affirmatively authorize suits against non-debtors. Second, even if it did authorize such suits, Crystallex does not allege that PDVH was a trustee, attorney, or other advisor. Moreover, we question the continued validity of this portion of the statute. As PDVH argues, since its enactment in 1999, § 1307(c) may have been rendered "surplusage" by Delaware case law finding that DUFTA only provides a cause of action against debtors, thereby shielding advisors from liability. *See* Reply Br. for Appellant at 21 (citing *Edgewater*, 2010 WL 720150, at *2).

Similarly, Crystallex argues to no avail that § 1308 of the statute supports non-debtor liability. Section 1308 provides that transferees are not liable under the statute if they received title in good faith for equivalent value. 6 Del. C. § 1308. Crystallex seems to suggest that since good faith transferees are not liable under the statute, relief should be afforded against bad faith non-debtor transferors. *See* 6 Del. C. § 1308. But this is a non sequitur. Moreover, there simply is no support for subjecting bad faith non-debtor transferors to liability under the Delaware case law. We are not permitted to "act as a judicial pioneer" when applying state law, and are therefore unwilling to expand the statute to cover bad faith non-debtor transferors. *Sheridan*, 609 F.3d at 253.

Nor are we persuaded by Crystallex's claim that courts in other jurisdictions have found non-debtor transferors liable under similar fraudulent transfer statutes. Crystallex cites

16

only two such cases: *Gutierrez v. Givens*, 1 F. Supp. 2d 1077 (S.D. Cal. 1998), and *In re Carousel Candy Co. v Weber*, 38 B.R. 927 (E.D.N.Y. 1984). Those case are not binding on us, nor would they be binding on the Delaware Supreme Court. Regardless, these cases are inapposite. The defendant bank in *Gutierrez* did not argue that it was not liable under the California fraudulent transfer statute, Cal. Civil Code § 3439, based on its non-debtor status. Instead, it argued that the fraudulent transfer claim against it should be dismissed because the main remedy available under the statute did not apply to a non-transferee such as the bank. *Gutierrez*, 1 F. Supp. 2d at 1087. The court rejected this argument, finding that *if* the bank was liable under the statute, the bank could still be subject to alternative remedies. *Id.* It did not have to determine whether the non-debtor bank could be liable under the statute. *Carousel* is also distinguishable. In that case, the court allowed a fraudulent transfer claim to proceed against a non-debtor, but it based its decision on the fact that the transferor was the debtor's attorney, owed the debtor a fiduciary duty, and "was de facto in control of the debtor" at the time of the transfer. 38 B.R. at 938. Those facts are not present here, nor does the Delaware case law hint at broadening the concept of "by a debtor" in such a fact pattern.

Even if we were to consider out-of-jurisdiction cases, the majority of courts that have considered the issue have rejected non-debtor transferor liability. *See, e.g., Ferri v. Powell-Ferri*, No. MMXCV116006351S, 2012 WL 3854425 at *4 (Conn. Super. Ct. July 30, 2012) (striking a fraudulent transfer claim against a non-debtor transferor and finding no support for the position that "a third party can be liable for making a fraudulent transfer as to a party to whom the third party is not a debtor"); *Folmar & Assoc's LLP v. Holberg*,

17

776 So. 2d 112, 118 (Ala. 2000), *overruled on other grounds by White Sands Grp., LLC v. PRS IILLC*, 32 So. 3d 5 (Ala. 2009) (rejecting a fraudulent transfer claim and finding "no case in which the provisions of the Alabama Uniform Fraudulent Transfer Act have been extended to apply to transferors other than the debtor"); c*f. Healthco Int'l, Inc.*, 201 B.R. 19, 21 (Bankr. D. Mass. 1996) (finding that the transfers at issue were "not transfers by the Debtor and hence are immune from fraudulent transfer attack" under the federal Bankruptcy Code).

We also decline to rely on the broader dictionary definition of "by"—which includes "through the agency or instrumentality of" and "on behalf of"—to extend DUFTA to cover non-debtor transferors. First, we do not read the allegations in the complaint to actually aver that PDVH acted as an agent or "on behalf of" Venezuela. Second, we need not resort to dictionary definitions where the Delaware courts have clearly indicated that "by a debtor" means that the debtor itself must have made the transfer.

Finally, we reject Crystallex's argument that DUFTA's "broad remedial purpose" should cause us to declare the transfer fraudulent. Br. for Appellant, 37. We also decline to find the non-debtor transfer here fraudulent based on equitable considerations, as our dissenting colleague suggests. Dissenting Op. at 9. It is true that "DUFTA grants a court 'broad latitude' for the court to craft a *remedy*," *Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC*, C.A. No. 6546-VCL, 2014 WL 5192179 (Del. Ch. Oct. 10, 2014) (citation omitted) (emphasis added), and "leaves considerable leeway for the exercise of equitable discretion" in doing so. *In re Mobilactive Media, LLC*, C.A. No. 5725-VCP, 2013 WL

297950 (Del. Ch. Apr. 24, 2009). *See also* 6 Del. C. § 1307(a)(3)(c) (courts may invoke equitable principles to craft "[a]ny [] relief the circumstances may require"). But having broad latitude to craft a remedy for a DUFTA violation does not necessarily mean we have broad latitude to determine what fits within the contours of the statute in the first place. Moreover, the Chancery Court is a court of equity. *See* 10 Del. C. § 341 ("The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity."). It has had the opportunity to conclude, as an equitable matter, that DUFTA covers transfers by non-debtors. But, so far, it has not. Delaware courts have closed the door to non-debtor transferor liability under the state statute, and we are not free to open it.

Sidestepping the "by the debtor" requirement, Crystallex looks to other elements of the statute in an attempt to cover the transaction. First, Crystallex focuses on the "transfer" element. It points to the statute's broad definition of "transfer," which includes both direct and indirect transfers, and argues that the indirect transfer here is therefore covered by the statute. *See* 6 Del. C. § 1301(12) ("'Transfer' means every mode, direct or indirect, . . . of disposing of or parting with an asset or an interest in an asset"). The Dissent cites this language as well, arguing that our interpretation reads the term "indirect" out of the statute. Dissenting Op. at 7. But this argument conflates two separate elements of a DUFTA claim: (1) a transfer (2) made by the debtor. In other words, DUFTA may cover an indirect transfer, but that transfer must nonetheless be made "by a debtor" in order to be cognizable under the statute. Nothing in the complaint suggests that Venezuela, the debtor, transferred an asset directly or indirectly. Indeed, it was the recipient of the assets.

19

Crystallex also understandably focuses on the intentional nature of the transaction—to remove assets from the United States to Venezuela where they would not be subject to execution by Venezuela's creditors. Crystallex points to various "badges of fraud," including the fact that several Venezuelan officials publicly said that the government would not pay any arbitral awards and that the purpose of the transfers was to shield CITGO Petroleum from potential arbitration judgments. A40-41, A62. Certainly, the intent behind this series of transactions was to hinder creditors. It may be tempting to conclude that PDVH's transfer to PDVSA was therefore a fraudulent transfer under DUFTA. But these badges of fraud go to only one of the three necessary elements of a DUFTA claim—"actual intent" to hinder, delay or defraud any creditor of the debtor. 6 Del. C. § 1304. Despite detailed allegations of intent, Crystallex's DUFTA claim against PDVH nonetheless fails because it does not allege a transfer "by a debtor."

## B. Theories of Aiding and Abetting and Conspiracy Under DUFTA

We now must decide whether Crystallex's complaint nonetheless states a DUFTA claim against PDVH, given the debtor Venezuela's alleged role in the transfer scheme. Crystallex clearly alleges that "Venezuela, through its alter ego, PDVSA, perpetrated this transfer to hinder or delay Crystallex's ability to enforce its arbitration award." A34. Venezuela "devised" the scheme and "enlisted" its alter ego PDVSA to "extract as much value as possible from CITGO." A31. PDVSA did so by "orchestrating" a series of transfers

20

that "converted CITGO's value to cash, then removing those funds from the United States and transferring them into PDVSA's coffers in Venezuela." A31. "All of the steps in this fraudulent transfer were planned out . . . and were part of a single scheme" to benefit Venezuela. A43.

The issue thus becomes whether a claim under DUFTA can be stated where the debtor orchestrated a scheme whereby a non-debtor transferred assets to the debtor. Presumably, this would be based on a theory of aiding and abetting the transfer, or on a theory of conspiracy. The Dissent would find that "even though PDV Holding was not a debtor to Crystallex, it clearly facilitated the fraudulent transfer and is therefore a proper defendant in this case." Dissenting Op. at 4. However, according to Delaware courts, a DUFTA claim based on a theory of non-principal liability is not cognizable under the statute. The Chancery Court has foreclosed the possibility of aiding and abetting liability under DUFTA. *Edgewater*, 2010 WL 720150 at \*2 ("[T]he Delaware Fraudulent Transfer Act does not create a cause of action for aiding and abetting or conspiring to commit, a fraudulent transfer."); *Trenwick American Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 203 (Del. Ch. 2006) ("Despite the breadth of remedies available under state and federal fraudulent conveyance statutes, those laws have not been interpreted as creating a cause of action for 'aiding and abetting.'"), Nor can Crystallex succeed on a theory of conspiracy, as the Chancery Court has specifically ruled to the contrary. *See Quadrant Structured Products Co. v. Vertin,* 102 A.3d 155, 203 (Del. Ch. 2014) ("Under Delaware law, a conspiracy cannot be predicated on fraudulent transfer").

21

We must give due deference to the Delaware courts' opinions on these issues of state law, and these opinions limit DUFTA to transfers by debtors—which PDVH is not alleged to be. We cannot extend DUFTA beyond these confines. "We leave to . . . the state legislatures and, where relevant, to the state courts the task of expanding or restricting liability [theories]." *Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 274 (3d Cir. 1985). Crystallex has failed to successfully plead a transfer "by a debtor" and thus failed to successfully plead a fraudulent transfer claim against PDVH under DUFTA.

## III. Conclusion

For the foregoing reasons, we will reverse the order of the District Court and remand for further proceedings consistent with this opinion.

FUENTES, *Circuit Judge*, *dissenting*.

Crystallex, a Canadian company, owned the exclusive rights to Las Cristinas, a gold mine in the Republic of Venezuela ("Venezuela"). According to the complaint, the mine has one of the largest unmined gold reserves in the world, between 17 and 26 million ounces of gold. For nearly a decade, Crystallex invested more than $640 million to develop the mine. However, despite Crystallex's many applications, Venezuela never issued the permits needed to extract and sell gold. Eventually, claiming that Crystallex had stalled progress on the mine's development, Venezuela terminated Crystallex's mining agreement and seized the mine. According to Crystallex, this was all part of Venezuela's scheme to expropriate its substantial investment.

Following the seizure, Venezuela transferred Crystallex's interest in the mine to Petróleos de Venezuela, S.A. ("Petróleos"), a state-owned company. Petróleos, in turn, sold 40% of that interest to the Venezuelan Central Bank for $9.5 billion. Venezuela's seizure forced Crystallex into bankruptcy. Having lost its entire investment in the mine, Crystallex brought an arbitration against Venezuela under a treaty between Canada and Venezuela. Ultimately, the arbitration tribunal found that Venezuela's conduct violated the treaty and awarded Crystallex over $1.2 billion in damages.[1]

---

[1] The District Court for the District of Columbia later confirmed the award and entered judgment in Crystallex's favor for over $1.2 billion. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 244 F. Supp. 3d 100, 105

While the arbitration was pending, Venezuela repeatedly, including through its former President Hugo Chávez, maintained that it would refuse to pay any arbitration award. To that end, Venezuela devised a fraudulent scheme to transfer $2.8 billion out of the United States. It did so through a complex series of debt offerings and dividend transfers involving Petróleos and its wholly-owned Delaware subsidiaries, Citgo Holding, Inc. ("Citgo Holding") and defendant PDV Holding, Inc. ("PDV Holding").[2] Venezuela's purpose was clear: to move its assets out of the United States to prevent judgment creditors like Crystallex from executing upon them.

The following diagram depicts the flow of funds from the United States to Venezuela as alleged by Crystallex:

---

(D.D.C. 2017). As of this writing, Venezuela's appeal of that decision is pending.

[2] Interestingly, the bond offering materials said that "no assurance can be given that any of the [t]ransactions would not be challenged as a fraudulent transfer." A-44.

At the direction of Petróleos, a Venezuelan state-owned company, Citgo Holding, a Delaware corporation, issued a $2.8 billion dividend to PDV Holding.

↓

At the direction of Petróleos, PDV Holding, a Delaware corporation, issued a $2.8 billion dividend to Petróleos.

↓

Petróleos, immune from suit under the Foreign Sovereign Immunities Act, received a $2.8 billion dividend in Venezuela.

Against this background, the majority holds that Crystallex cannot assert a claim against PDV Holding—the only remaining defendant in this case—under the Delaware Uniform Fraudulent Transfer Act (the "Fraudulent Transfer Act" or the "Act") because PDV Holding, a Delaware corporation, was merely a non-debtor transferor, and not a debtor or transferee, in the fraudulent scheme. I disagree. I would affirm the District Court.

I would conclude that Crystallex has adequately pled a claim under the Fraudulent Transfer Act against PDV Holding, a direct participant in the fraudulent transfer. Specifically, as the District Court found, PDV Holding's issuance of a $2.8 billion dividend to Petróleos, at

3

Venezuela's direction, was a "transfer" of debtor property "by a debtor" under the Fraudulent Transfer Act. And, like the District Court, I would find that even though PDV Holding was not a debtor to Crystallex, it clearly facilitated the fraudulent transfer and is therefore a proper defendant in this case.

As I view the facts, it cannot be that the Fraudulent Transfer Act, which is firmly grounded in principles of equity, leaves Crystallex—the victim of a purposeful and complicated fraud—without any remedy for PDV Holding's role in transferring $2.8 billion out of the United States to avoid Venezuela's creditors. The Fraudulent Transfer Act does not support such a result.

However, today the majority signals that a party, such as PDV Holding, may knowingly participate in a fraudulent transfer so long as it is not a debtor. Indeed, a consequence of the majority's holding is that, under the Fraudulent Transfer Act, a foreign sovereign—such as Venezuela—is free to fraudulently repatriate assets, so long as the party making the transfer is a non-debtor. That result does not comport with—but rather is wholly contrary to—the Act's broad remedial purpose.

Moreover, I believe the majority is wrong as a matter of law. According to the majority, the "Delaware courts have closed the door to non-debtor transferor liability under" the Fraudulent Transfer Act.[3] I cannot agree. None of the cases cited by the majority have held that non-debtor transferors are immune from liability under the Act.

---

[3] Maj. Op. at 19.

4

To the contrary, the committee that drafted the Uniform Fraudulent Transfer Act, the model statute on which the Fraudulent Transfer Act is based, plainly stated that its remedies are not exclusive.[4] Indeed, the Fraudulent Transfer Act grants courts broad latitude to craft remedies in response to fraudulent transfers. Specifically, the Act provides that courts may craft "[a]ny [] relief the circumstances may require."[5] What's more, as the District Court noted, the Act states that "principles of law and equity" should be used to "supplement its provisions" unless "displaced by the [Act's] provisions."[6]

Importantly, the Fraudulent Transfer Act does not, by its own terms, bar a claim against a non-debtor transferor such as PDV Holding. Thus, in keeping with the Act's requirement that courts "supplement its provisions" with the "principles of law and equity," we must determine whether, assuming the fraudulent transfer scheme occurred as alleged, it was appropriate for the District Court to conclude that defendant PDV Holding's "continued presence in this action is appropriate."[7]

---

[4] *See* Unif. Fraudulent Transfer Act § 7 cmt. 1 (1984) ("The remedies specified in this section are not exclusive."). The Uniform Fraudulent Transfer Act, which was promulgated by the National Conference of Commissioners on Uniform State Law in 1984, has been adopted in all but a handful of states.

[5] 6 Del. C. § 1307(a)(3)(c).

[6] *Id.* § 1310.

[7] A-13.

Because I would hold that the answer is yes, I respectfully dissent.

## I. Crystallex Stated a Fraudulent Transfer Act Claim

I completely agree with the District Court that Crystallex pled a Fraudulent Transfer Act claim against PDV Holding. I also agree with the District Court that PDV Holding's non-debtor status does not (and should not) shield it from liability for its fraudulent repatriation of $2.8 billion to Petróleos, a Venezuelan state-owned company.

### A. The Dividend to Petróleos Was a "Transfer"

Under the Fraudulent Transfer Act, a "transfer" includes "every mode, direct or indirect . . . of disposing of or parting with an asset or an interest in an asset."[8] "Asset" is defined broadly as "property of a debtor."[9] The District Court found that PDV Holding's $2.8 billion dividend to Petróleos involved the "property of a debtor," and therefore, was a "transfer" under the Act. I agree with that conclusion, and PDV Holding does not challenge it on appeal.

### B. The Transfer Was Made "By a Debtor"

The majority first holds that Crystallex's claim fails because the $2.8 billion dividend to Petróleos was made by PDV Holding, not Petróleos itself, and thus not "by a debtor" under the Fraudulent Transfer Act. I disagree. In my view,

---

[8] 6 Del. C. § 1301(12).

[9] *Id.* § 1301(2).

6

and consistent with the Act, PDV Holding's dividend to Petróleos, as requested by Venezuela, was an *indirect* transfer "by a debtor." As such, it is a clear violation of the Act.

A transfer must be "by a debtor" to be actionable under the Act. As the District Court noted, a "transfer" includes "every mode, direct or *indirect* . . . of disposing of or parting with an asset or an interest in an asset."[10] The majority's interpretation of "by a debtor" reads the term "*indirect*" out of the Act. This result does not comport with our practice of "avoid[ing] interpretations that effectively read words out of a statute."[11]

Further, the Act does not define the phrase "by a debtor." "When words are left undefined, we have turned to 'standard reference works such as legal and general dictionaries in order to ascertain' their ordinary meaning."[12] In fact, this approach mirrors the Delaware Supreme Court's method for interpreting undefined words in statutes.[13] Merriam-Webster's dictionary defines "by" to include "on

---

[10] *Id.* § 1301(12) (emphasis added).

[11] *United States v. Taylor*, 686 F.3d 182, 193 (3d Cir. 2012).

[12] *Eid v. Thompson*, 740 F.3d 118, 123 (3d Cir. 2014) (quoting *United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008)).

[13] *See Cephas v. State*, 911 A.2d 799, 801 (Del. 2006) ("Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined[.]" (quoting *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006))).

behalf of."[14] As such, as the District Court did, I would hold that a transfer is made "by a debtor" under the Act when it is executed on the debtor's "behalf."

Here, Crystallex alleges that PDV Holding's $2.8 billion dividend to Petróleos was part of a complex scheme directed by Venezuela. On these facts, I would find that PDV Holding's dividend to Petróleos, sent on Venezuela's behalf, was a transfer "by a debtor." I find the majority's arguments to the contrary unconvincing.[15]

---

[14] Merriam-Webster's Collegiate Dictionary 157 (10th ed. 1996).

[15] The majority argues that the scheme alleged "is not covered, or contemplated, by [the Act]" because the transfer went *to the debtor*. Maj. Op. at 11. I disagree. As noted, under the Act, a "transfer" includes "every mode . . . of *disposing of* or parting with an asset." 6 Del. C. § 1301(12) (emphasis added). The Act does not define "disposing of." But, in dictionary terms, "dispose of" means "to place, distribute, or arrange." Merriam-Webster's Collegiate Dictionary 335 (10th ed. 1996). Here, PDV Holding's dividend to Petróleos caused the proceeds to be "placed" in Venezuela. From this, I would hold that PDV Holding's dividend falls within the Act because it "dispose[d] of" Venezuela's property. To be sure, since "transfer" also includes "parting with an asset," the phrase "disposing of" would be redundant if it only captured the movement of property *away from the debtor*. *See United States v. Reeves*, 752 F.2d 995, 998 (5th Cir. 1985) ("A statute should be read to avoid rendering its language redundant if reasonably possible.").

8

### C. Equity Dictates That PDV Holding is Liable Under the Fraudulent Transfer Act

Moreover, I disagree with the majority's holding that non-debtor transferors, such as PDV Holding, are immune from liability under the Act. Specifically, the majority asserts that "Delaware courts have closed the door to non-debtor transferor liability under" the Act.[16]

In this regard, the majority primarily relies on the Delaware Chancery Court's decision in *Edgewater Growth Capital Partners L.P. v. H.I.G. Capital, Inc.*[17] In *Edgewater*, a minority owner of a corporation sought to hold the corporation's former directors liable under the Fraudulent Transfer Act for aiding and abetting the corporation's sale of its assets to a senior lender. In support of its aiding and abetting theory, the minority owner alleged that the directors "conspired with" the senior lender to cause the corporation "to run an unfair, tainted sales process."[18] However, the Court held that the Act "does not create a cause of action for aiding and abetting a fraudulent transfer, or conspiring to commit, a fraudulent transfer."[19] In *Edgewater*, the Court observed that "[b]y its own terms, the [] Fraudulent Transfer Act only provides for a cause of action by a creditor against debtor-transferors or transferees."[20]

---

[16] Maj. Op. at 19.

[17] C.A. No. 3601-VCS, 2010 WL 720150 (Del. Ch. Mar. 3, 2010).

[18] *Id.* at *1.

[19] *Id.* at *2.

[20] *Id.*

9

The majority interprets this to mean that *Edgewater* definitively holds that non-debtor transferors such as PDV Holding are immune from liability under the Fraudulent Transfer Act. Admittedly, reading that sentence in isolation gives this argument some facial appeal. However, *Edgewater* merely addressed whether the Act recognizes an aiding and abetting claim. In fact, it does not appear that the Delaware courts have ever held that non-debtor transferors are immune from liability under the Act.

Additionally, unlike the majority, I do not interpret Crystallex's complaint as alleging an aiding and abetting or conspiracy claim against PDV Holding. Instead, Crystallex asserts that PDV Holding *directly participated* in the fraudulent scheme. Indeed, unlike the directors in *Edgewater*, Crystallex alleges that PDV Holding directly conveyed $2.8 billion in dividend proceeds to Petróleos in Venezuela.

The majority also relies on *In re Wickes Trust* in asserting that the Delaware Chancery Court has barred non-debtor transferor liability under the Act.[21] However, *In re Wickes Trust* only stands for the proposition that a plaintiff cannot bring a fraudulent transfer claim unless she is a creditor of the debtor.[22] *In re Wickes Trust* does not appear relevant to the question of whether the Act recognizes non-debtor transferor liability.[23]

---

[21] C.A. No. 2515-VCS, 2008 WL 4698477 (Del. Ch. Oct. 16, 2008).

[22] *Id.* at *7-8.

[23] The majority also cites *Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, C.A. No 7994-VCN, 2016 WL 769586 (Del.

10

In my view, the Fraudulent Transfer Act is meant to serve a broad remedial purpose with respect to the specific circumstances of a fraudulent transfer. As the Delaware Chancery Court has observed, the Fraudulent Transfer Act "grants a court 'broad latitude' . . . to craft a remedy to 'put a creditor in the position she would have been in had the fraudulent transfer not occurred.'"[24] Moreover, the Act states that "the principles of law and equity" should be used to "supplement its provisions" unless "displaced by the [Act's] provisions."[25] To that end, the Act provides that courts may invoke equitable principles to craft "[a]ny [] relief the circumstances may require."[26]

---

Ch. Feb. 18, 2016), in stating that the Delaware Chancery Court "has [] rejected fraudulent transfer claims against non-debtor transferors under analogous provisions in the federal Bankruptcy Code." Maj. Op. at 13. However, in that case, the Court rejected the claim because the assets did not belong to the debtor. Here, PDV Holding's dividend to Petróleos plainly involved debtor property.

[24] *Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC*, C.A. No. 6546-VCL, 2014 WL 5192179, at *15 (Del. Ch. Oct. 10, 2014) (quoting *August v. August*, C.A. No. 3180-VCS, 2009 WL 458778, at *10 (Del. Ch. Feb. 20, 2009)); *see also In re Mobilactive Media, LLC*, C.A. No. 5725-VCP, 2013 WL 297950, at *32 (Del. Ch. Jan. 25, 2013) ("[The Fraudulent Transfer Act] provides broad remedies to creditors and leaves considerable leeway for the exercise of equitable discretion.").

[25] 6 Del. C. § 1310.

[26] *Id.* § 1307(a)(3)(c).

Crystallex alleges that, after expending a substantial amount of time and money in developing the long-inoperable gold reserves at Las Cristinas, Venezuela unlawfully usurped the mine and gifted it to Petróleos, which then sold 40% of that interest for a whopping $9.5 billion. To make matters worse, at the time Venezuela seized Las Cristinas, Crystallex had yet to receive any return on its investment because of Venezuela's purposeful delays in issuing required permits. Moreover, after Crystallex lawfully initiated an arbitration against Venezuela, Venezuela concocted a fraudulent scheme to repatriate $2.8 billion from PDV Holding to Petróleos in Venezuela.[27]

Altogether, I am hard-pressed to conceive of a scenario more worthy of a trial court's invocation of its broad equitable powers under the Fraudulent Transfer Act than this one. In my view, Crystallex has presented compelling and

---

[27] The majority suggests that I conflate liability and remedies. *See* Maj. Op. at 18-19. Not at all. To bring a claim under the Act, a plaintiff must allege the existence of a fraudulent transfer. *See* 6 Del. C. § 1304(a). As explained, I believe Crystallex did so. Thus, Crystallex may bring "an action for relief against [that] transfer." *Id.* § 1307(a). In outlining the relief available in such an action, the Act enumerates remedies against debtors and transferees involved in the transfer. *See id.* §§ 1307(a), 1308(b). While the Act does not specify remedies against non-debtor transferors, such as PDV Holding, its directive that courts craft "[a]ny [] relief the circumstances may require" provides a clear avenue for relief here. *Id.* § 1307(a)(3)(c).

12

plausible facts to have its case against PDV Holding heard under the Act. I would therefore affirm the District Court.[28]

## II. Conclusion

For the above reasons, I respectfully dissent.

---

[28] The majority does not reach PDV Holding's argument that, even if Crystallex stated a claim, the Foreign Sovereign Immunities Act's restrictions on prejudgment attachment of sovereign property preempt that claim. *See* 28 U.S.C. §§ 1609-1611. Since I believe Crystallex stated a claim, I would reach the issue. PDV Holding is not a foreign state; it is a Delaware corporation. *See id.* § 1603. As such, to the extent that Crystallex seeks relief with regard to PDV Holding's property, I would hold that the restrictions on prejudgment attachment of sovereign property are inapplicable to Crystallex's claim.